UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BRUCE W. BOWMAN, III and | § | |
| PAMELA J. BOWMAN, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:14-CV-4036-B |
| | § | |
| CITIMORTGAGE INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant CitiMortgage, Inc.'s Motion to Dismiss Plaintiffs' First Amended Complaint (doc. 17), filed on February 13, 2015. After reviewing the Motion, the Court concludes that it should be and hereby is **GRANTED**.

### I.

### BACKGROUND[1]

A.    *Factual Background*

This suit arises from Plaintiffs' efforts to obtain a modification of their home mortgage loan and impede the foreclosure of their place of residence. On February 27, 2007, Plaintiffs Pamela Bowman and Bruce Bowman, III executed a Texas Home Equity Note (the "Note") for the purchase of property located at 4429 Potomac Avenue, Dallas, Texas (the "Property"). Docs. 15, First Amended Complaint ("FAC") ¶¶ 7, 9; 15-1, Pls.' App. to FAC, Ex. A, Note. At the same time,

---

[1] The Court draws its factual account from the allegations contained in Plaintiffs' First Amended Complaint (doc. 15) and from the attachments and documents incorporated therein by reference. *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).

Plaintiffs executed a Texas Home Equity Security Instrument (the "Deed of Trust"), granting ABN Amro Mortgage Group, Inc. a security interest in the Property to ensure repayment of the Note.[2] Pls.' App. to FAC, Ex. 3, Deed of Trust. Plaintiffs aver that Defendant CitiMortgage, Inc. was the servicer of the Note at all times relevant to this lawsuit. FAC ¶ 13. Plaintiffs also indicate that, on October 18, 2014, their counsel notified Defendant that the Note failed to meet certain requirements established by Section 50(a)(6)(Q)(x) of the Texas Constitution. *Id.* at ¶¶ 11–12; Pls.' App. to FAC, Ex. B, Notice of Defect in Texas Home Equity Note.

Plaintiffs explain that the financial crisis of 2007 and 2008 affected their ability to earn a living and caused them to fall behind on their loan payments. FAC ¶¶ 14–16. As a result, in June 2011, Defendant commenced foreclosure proceedings on the Property by applying for an order for foreclosure in Dallas County Court. *Id.* at ¶ 16; Pls.' App. to FAC, Ex. C, Register of Actions. After this foreclosure proceeding was dismissed, Plaintiffs allege that they contacted Defendant to request hardship assistance on their loan obligations. FAC ¶ 18. According to Plaintiffs, Defendant advised them that it had "done deals" with homeowners whereby the amounts owed were refinanced at an interest rate near 2% and amortized over a period of forty years. *Id.* at ¶ 20. In addition, Defendant allegedly informed Plaintiffs that they were required to make the full periodic payments of $6,003.24

---

[2] In response to Defendant's Motion to Dismiss, Plaintiffs insist that they did not discuss the Deed of Trust in their Amended Complaint, and that the Court therefore may not consider the document when deciding the present Motion to Dismiss. Doc. 26, Pls.' Am. Resp. 1–2. Defendant disagrees, correctly noting that the Deed of Trust was publicly filed and that the Court may take judicial notice of matters contained in the public record. Doc. 29, Def.'s Reply 1; *see Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007). Moreover, Plaintiffs have included the Deed of Trust as an attachment to their Amended Complaint. *See* Pls.' App. to FAC, Ex. 3, Deed of Trust. Because "a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice," the Court considers the Deed of Trust in deciding the present Motion to Dismiss. *Wolcott*, 635 F.3d at 763 (internal quotation and citation omitted).

under the Note; otherwise, any partial sum paid would not qualify as a payment. *Id.* at ¶ 22. In reliance on these alleged statements, Plaintiffs did not make any payments while their hardship application was pending, as they were unable to make payments in the full amount required. *Id.* at ¶ 23.

Plaintiffs contend that, while applying for the modification of their loan, Defendant sent them several requests for additional documents that were needed to complete the review process. *Id.* at ¶¶ 24–25. Plaintiffs maintain that they provided the necessary documents, but that on multiple occasions, Defendant informed them that the submitted documents had been misplaced and needed to be resent. *Id.* at ¶¶ 25–27.

According to Plaintiffs, Defendant promised to "assist" them in the modification process, but subsequently failed to fulfill these promises and made misrepresentations regarding the loan modification program and the status of Plaintiffs' application. *Id.* at ¶¶ 29–31. Moreover, Defendant allegedly agreed to a modified foreclosure process that would stop the foreclosure proceedings while Plaintiffs' modification application was pending.  *Id.* at ¶ 32. Plaintiffs insist that Defendant now fails and refuses to honor this agreement. *Id.* at ¶ 33.

B.     *Procedural Background*

Based on the above factual allegations, Plaintiffs filed suit against Defendant CitiMortgage, Inc. in County Court at Law Number 5 in Dallas, County, Texas on October 20, 2014, asserting claims for (1) negligence; (2) intentional and negligent misrepresentation; (3) negligent undertaking; (4) breach of fiduciary duty; (5) promissory estoppel; and (6) violation of the Texas Constitution. Doc. 1-5, Orig. Pet. Defendant removed the action to this Court on November 14, 2014. Doc. 1, Notice of Removal. On January 30, 2015, Plaintiffs filed their First Amended Complaint (doc. 15),

asserting the six causes of action listed above and adding that Defendant breached an "express promise to assist." *See* FAC ¶¶ 70–75.

On February 13, 2015, Defendant filed the present Motion to Dismiss Plaintiffs' First Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. Doc. 17. Plaintiffs responded to Defendant's Motion on March 7, 2015 and subsequently amended their response on March 17, 2015. *See* docs. 19, 26. Defendant submitted its Reply (doc. 29) on April 3, 2015. As such, Defendant's Motion to Dismiss is ripe for the Court's review.

## II.

## LEGAL STANDARD

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes the court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)(quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). The court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

When well-pleaded facts fail to achieve this plausibility standard, "the complaint has alleged—but

it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks and

alterations omitted).

## III.

## ANALYSIS

Defendant moves to dismiss all the claims asserted in Plaintiffs' Amended Complaint, namely:

(1) negligence; (2) intentional and negligent misrepresentation; (3) negligent undertaking; (4)

breach of fiduciary duty; (5) breach of "express promise to assist;" (6) promissory estoppel; and (7)

violation of the Texas Constitution. The Court reviews the adequacy of the pleadings as to each of

these claims, in turn, below.

A.      *Negligence*

The Court first considers Plaintiffs' claim for negligence. Under Texas law, the elements of

a negligence claim are: (1) a legal duty owed by one person to another; (2) breach of that duty; and

(3) damages proximately caused by the breach. *See Nabors Drilling, USA, Inc. v. Escoto*, 288 S.W.3d

401, 404 (Tex. 2009); *Lane v. Halliburton*, 529 F.3d 548, 565 (5th Cir. 2008).

Plaintiffs allege that, in assuming the responsibility to advise them on their loan modification

application, Defendant owed them a legal duty to manage the loan modification process with

ordinary care. FAC ¶ 41. Plaintiffs claim that Defendant failed to exercise such ordinary care in advising them on their loan modification and in handling the documents they submitted. *Id.* at ¶ 42. They specify that Defendant breached the duty it owed them by: (1) providing misleading information regarding failure to make payments; (2) providing confusing and contradictory instructions; (3) mishandling Plaintiffs' documents; (4) failing to timely respond when time-sensitive information was at issue; (5) failing to promptly communicate necessary information; and (6) engaging in foreclosure activities despite the assurance that foreclosure activities would stop. *Id.* at ¶ 45. Plaintiffs add that Defendant's breach of duty was the proximate cause of their damages, although they do not describe the nature of these damages. *Id.*

In seeking the dismissal of Plaintiffs' negligence claim, Defendant first asserts that the economic loss rule bars such tort claims, as they are based on alleged representations regarding the modification of the loan agreement—a contract. Doc. 17, Def.'s Mot. to Dismiss ("Def.'s Mot.") 4–6. The economic loss rule precludes recovery in tort when the loss is the subject matter of a contract between the parties. *See Sw. Bell Tele. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991). In deciding whether the economic loss rule applies to this negligence claim, the Court must "examine the source of the defendant's duty and the nature of the claimed injury." *Clark v. PFPP Ltd. P'ship*, 455 S.W.3d 283, 288 (Tex. App.— Dallas 2015, no pet.). The Texas Supreme Court has established the following framework for distinguishing between an action that sounds in tort and one that sounds in contract:

> If the defendant's conduct—such as negligently burning down a house—would give rise to liability independent of the fact that a contract exists between the parties, the plaintiff's claim may also sound in tort. Conversely, if the defendant's conduct—such as failing to publish an advertisement—would give rise to liability only because

- 6 -

> it breaches the parties' agreement, the plaintiff's claim ordinarily
> sounds only in contract. In determining whether the plaintiff may
> recover on a tort theory, it is also instructive to examine the nature
> of the plaintiff's loss. When the only loss or damage is to the subject
> matter of the contract, the plaintiff's action is ordinarily on the
> contract.

*Formosa Plastics Corp. USA v. Presidio Engineers and Contractors, Inc.*, 960 S.W.2d 41, 45 (Tex. 1998)

(quoting *DeLanney*, 809 S.W.2d at 494).

Here, Plaintiffs have not alleged that they have suffered any loss independent of the mortgage

loan contract; their claim is based on purported representations regarding the modification of their

loan—a contract—and the delay of foreclosure proceedings—a right provided in this contract.

Because there is no indication that Defendant's conduct "would give rise to liability independent of

the fact that a contract exists between the parties," the economic loss rule precludes Plaintiffs'

negligence claim, as well as Plaintiffs' other tort claims grounded in similar allegations. *See Hayes v.

Bank of Am., N.A.*, 4:13-CV-760-A, 2014 WL 308129, at *5 (N.D. Tex. Jan. 27, 2014) (concluding

that the economic loss rule bars tort claims based on defendant's representations regarding the

modification of a loan, the effects of such modification, and the delay of foreclosure, as all these

claims "flow solely from the note and deed of trust.").[3]

Plaintiffs insist that the economic loss rule does not apply because Defendant was the servicer

of Plaintiffs' loan and thus was not in privity of contract with Plaintiffs. Doc. 26, Pls.' First Am. Resp.

("Pls.' Resp.") 18–23. However, they fail to direct the Court to relevant authority on this matter.[4]

---

[3] As discussed in further detail below, the economic loss rule also bars Plaintiffs' additional tort claims for intentional and negligent misrepresentation and negligent undertaking, because these tort claims are based on similar allegations regarding the modification of the Note.

[4] Plaintiffs attempt to preserve their negligence claim by relying on the Texas Supreme Court's ruling in *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407 (Tex. 2011). However, this case does not

- 7 -

In its Reply, Defendant challenges Plaintiffs' position, noting that the economic loss rule can apply to cases in which a plaintiff attempts to assert a tort claim against a loan servicer for actions relating to the loan agreement governing the issue. Doc. 29, Def.'s Reply 2.

Indeed, this Court has applied the economic loss rule to claims similar to the one asserted here, and it has concluded that when the parties' relationship has its origin in the deed of trust, the rule bars tort claims that "are rooted in that contractual relationship." *Obuekwe v. Bank of Am., N.A.*, No. 4:11-CV-762-Y, 2012 WL 1388017, at *8 (N.D. Tex. Apr. 19, 2012) (concluding that a negligent misrepresentation claim against a servicer "flow[ed] from the deed of trust" and was thus barred by the economic loss rule); *see Wiley v. U.S. Bank, N.A.*, No. 3:11-CV-1241-B, 2012 WL 1945614, at *12 (N.D. Tex. May 30, 2012) (determining that the economic loss rule precluded a negligence claim against a servicer based on allegations that the servicer made misrepresentations "related to promises to provide a loan modification, promises not to foreclose, and payment amounts"). Thus, the fact that Defendant is the servicer of the loan does not shield Plaintiffs' tort claims from the economic loss rule.

In support of the application of the economic loss rule, Defendant further argues that it is in privity of contract with Plaintiffs, as it is not only the servicer of the loan, but is also the owner and holder of the Note and Deed of Trust by way of merger. Def.'s Reply 3. Defendant asks the Court

---

advance Plaintiffs' position, as it explains that the economic loss rule can apply where there is no privity of contract between parties, but that not all tort claims are precluded simply because they relate to the subject of a contract. *Sharyland Water Supply Corp.*, 354 S.W.3d at 419. Thus, the court explained that "[t]he economic loss rule does not swallow all claims between contractual and commercial strangers." *Id.* It concluded that the economic loss rule "cannot apply to parties without even remote contractual privity, merely because one of those parties had a construction contract with a third party, and when the contracting party causes a loss unrelated to its contract." *Id.* at 420. Because this is not the situation presently before the Court, *Sharyland* does not support Plaintiffs' argument that the economic loss rule does not apply to their negligence claim.

to take judicial notice of a publicly-filed certificate of merger, which indicates that ABN Amro Mortgage Group, Inc., the original lender, merged with Defendant in 2007. *Id.*; doc. 29-1, Ex. A to Def.'s Reply, Certificate of Merger. Defendant's status as owner and holder of the Note and Deed and Trust—of which the Court takes judicial notice—further solidifies the contractual relationship between the parties and bolsters the applicability of the economic loss rule. *Norris*, 500 F.3d at 461 n.9 ("[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record.").

Defendant also asserts that, contrary to Plaintiffs' allegations, it did not owe them a duty apart from its contractual obligations. Def.'s Mot. 8–10. The Court agrees. "Not only does no special relationship exist between a mortgagor and a mortgagee, but courts have held that there is no duty of care between them that would give rise to a negligence claim." *Thompson v. Bank of Am., N.A.*, 13 F. Supp. 3d 636, 652 (N.D. Tex. 2014) (internal quotations omitted), *aff'd* 783 F.3d 1022 (5th Cir. 2015). Therefore, Defendant did not owe Plaintiffs a duty of care outside of its contractual obligations, which adds to the pertinence of the economic loss doctrine and calls for the dismissal of this negligence claim.

For the reasons stated above, the Court concludes that the economic loss rule bars Plaintiffs' negligence claim and therefore **GRANTS** Defendant's Motion to Dismiss this cause of action.[5]

---

[5] Because the Court concludes that Plaintiffs' negligence claim is precluded by the economic loss rule, it need not address Defendant's remaining argument that the claim is also precluded by the statute of frauds. The Court instead addresses these arguments in its discussion of the claim for breach of the "express promise to assist."

B.     *Intentional and Negligent Misrepresentation*

Plaintiffs further assert claims for intentional and negligent misrepresentation. The elements of a claim for intentional misrepresentation are: "(1) a material misrepresentation that (2) the speaker knew to be false or made recklessly (3) with the intention to induce the plaintiffs' reliance, followed by (4) actual and justifiable reliance (5) causing injury." *Rio Grande Royalty Co., Inc. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010) (citing *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)).[6] To state a claim for negligent misrepresentation, in turn, a plaintiff must show that: (1) the defendant made a representation in the course of its business, or in a transaction in which it has a pecuniary interest; (2) the defendant supplied false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation. *Fed. Land Bank Ass'n v. Sloane,* 825 S.W.2d 439, 442 (Tex. 1991). Moreover, representations of future conduct cannot form the basis of a negligent misrepresentation claim. *See, e.g., Thomas v. EMC Mortg. Corp.*, 499 F. App'x 337, 342 (5th Cir. 2012) ("Because representations regarding future loan modifications and foreclosure constitute promises of future action rather than representations of existing fact, . . . the negligent misrepresentation claim was properly dismissed.") (internal citation and quotation omitted).

In support of their claims for both intentional and negligent misrepresentation, Plaintiffs allege that Defendant made misrepresentations of material fact regarding "the instruction to stop

---

[6] A claim for intentional misrepresentation is the same as a claim for fraud. *Kew v. Bank of Am., N.A.*, No. H-11-2824, 2012 WL 5832354, at *3 (S.D. Tex. Nov. 16, 2012).

making payments," the nature of the modification process and Plaintiffs' eligibility for such modification, "the availability of loans at a reduced interest rate," and the need to resubmit documents relevant to the modification review process. Pls.' Resp. 25; FAC ¶ 46.

Again, Defendant argues that the economic loss rule bars Plaintiffs' claims for intentional and negligent misrepresentation, because any representations regarding the loan modification relate to the contractual relationship between the parties and cannot support an independent tort claim. Def.'s Mot. 4–6. As previously discussed, Plaintiffs' arguments in opposition to the economic loss rule are unavailing, as the relationship between the parties is governed by the loan agreement; thus, any representation regarding the loan's modification would give rise to an action that sounds in contract, not in tort. *See, e.g., Iacobucci v. Wells Fargo, N.A.*, No. 3:13-CV-1425-B, 2013 WL 6061343, at *8–10 (N.D. Tex. Nov. 15, 2013), *aff'd sub nom. Iacobucci v. Wells Fargo Bank, N.A.*, 567 F. App'x 257 (5th Cir. 2014) (concluding that the economic loss rule precluded fraud and fraudulent misrepresentation claims based on allegations that the mortgage servicer "told [plaintiffs] the only way they could qualify for a loan modification was to stop making payments on their mortgage" because these allegations arose "from a contractual dispute . . . and flow[ed] from [plaintiffs'] mortgage and [d]efendants' attempt to foreclose thereon."). Moreover, Plaintiffs do not allege that they suffered an injury independent of the subject matter of the contract, thus further warranting the application of the economic loss rule. *See Formosa Plastics*, 960 S.W.2d at 45; *DeLanney*, 809 S.W.2d at 494. The Court thus concludes that the economic loss rule bars Plaintiffs' claims for

intentional and negligent misrepresentation and **GRANTS** Defendant's Motion to Dismiss as to these claims.[7]

C.    *Negligent Undertaking*

The Court next considers Plaintiffs' claim for negligent undertaking. A claim for negligent undertaking requires the plaintiff to show that the defendant: "(1) undertook to perform services that it knew or should have known were necessary for [plaintiff's] protection; (2) failed to exercise reasonable care in performing those services; and (3) performed the services in a manner that increased [plaintiff's] risk of harm." *Lovett v. HSBC Mortg. Servs., Inc.*, No. 3:13-CV-3593-O, 2014 WL 547031, at *5 (N.D. Tex. Feb. 11, 2014) (citing *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 838 (Tex. 2000)). In addition, a plaintiff must establish that physical harm resulted from the defendant's rendition of services. *Id.*

Plaintiffs here do not offer allegations sufficient to support a claim for negligent undertaking. Instead, they merely recite the elements of the claim without clarifying how they align with Defendant's conduct. *See* FAC ¶¶ 76–79. Additionally, as Defendant correctly observes, Plaintiffs do not allege that any physical harm resulted from Defendant's actions. *See James v. Wells Fargo Bank, N.A.*, 533 App'x 444, 448 (5th Cir. 2013) (concluding that "plaintiffs' claim for negligent undertaking fails as a matter of law because plaintiffs allege no physical harm resulting from [defendant's] voluntary undertaking of services."). Further, as with Plaintiffs' other tort claims, this claim is barred by the economic loss rule, as it precludes recovery in tort when the alleged loss is to

---

[7] Because the Court concludes that these claims are barred by the economic loss rule, it need not address the parties' remaining arguments on this matter.

the subject matter of a contract between the parties. Accordingly, the Court **GRANTS** Defendant's Motion to Dismiss Plaintiffs' claim for negligent undertaking.

D.     *Breach of Fiduciary Duty*

Plaintiffs next assert a claim for breach of fiduciary duty based on Defendant's actions in connection with the loan modification process. The elements of a claim for breach of fiduciary duty are: (1) the existence of a fiduciary relationship between the plaintiff and defendant; (2) defendant's breach of this fiduciary duty to the plaintiff; and (3) injury to the plaintiff or benefit to the defendant resulting from defendant's actions. *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App.—Dallas 2006, pet. denied).

In support of this claim, Plaintiffs allege that Defendant agreed to advise Plaintiffs on the availability of loan modification programs and assist them in navigating these programs. FAC ¶¶ 56–57. Plaintiffs add that "Defendant's advice to Plaintiffs was given outside the ordinary role of a lender of money, or servicer of the Note, and provided to assist Plaintiffs in the conduct of their affairs." *Id.* at ¶ 59. They contend that Defendant's advisory role created a special trust relationship between the parties, and that they relied on Defendant's advice to their detriment by not making payments during the modification process. *Id.* at ¶¶ 62–65. Plaintiffs explain that this caused them to incur damages. *Id.* at ¶ 65. In moving to dismiss this claim, Defendant argues that Texas courts do not recognize a fiduciary duty owed by a lender to a borrower. Def.'s Mot. 17.

Generally, Texas courts do not recognize a fiduciary duty owed by a mortgage lender or servicer to a borrower. *Williams v. Countrywide Home Loans,* 504 F. Supp. 2d 176, 192 (S.D. Tex. 2007). "In order to prove that a fiduciary relationship does exist in such a context, the plaintiff must show extraordinary circumstances such as excessive control and influence by the lender on the

borrower's business activities." *In re Absolute Res. Corp.*, 76 F. Supp. 2d 723, 734 (N.D. Tex. 1999). Further, "[t]he mere fact that one party to a relationship subjectively trusts the other does not indicate the existence of a fiduciary relationship." *Smith v. Deneve*, 285 S.W.3d 904, 911 (Tex. App.—Dallas 2009, no pet.).

Here, there is no indication that Defendant owed a fiduciary duty to Plaintiffs, as the facts alleged only give rise to the reasonable inference that Defendant was acting as a lender and servicer assisting Plaintiffs in a routine loan modification process. *See Williams,* 504 F. Supp. 2d at 192. Although Plaintiffs allege that "Defendant's advice to Plaintiffs was given outside the ordinary role of a lender of money, or servicer of the Note, and provided to assist Plaintiffs in the conduct of their affairs," this conclusory assertion is not accompanied by factual allegations suggesting that Defendant was acting in anything other than its capacity as lender and servicer. *Id.* at ¶ 59. Moreover, while Plaintiffs maintain that "Defendant's advisory role with Plaintiffs created a relationship of trust and confidence," they neglect to clarify why Defendant's advisory role amounted to an extraordinary circumstance revealing the existence of a fiduciary relationship. *Id.* at ¶ 62. Indeed, they have not referenced any "extraordinary circumstances such as excessive control and influence by the lender." *In re Absolute Res. Corp.*, 76 F. Supp. 2d at 734. Lastly, Plaintiffs aver that they "followed the guidance Defendant provided," but Plaintiffs' subjective trust in Defendant cannot, on its own, lead to the creation of a fiduciary relationship. *See Smith*, 285 S.W.3d at 911. In sum, Plaintiffs have failed to provide any basis for the Court to infer that a fiduciary relationship existed between the parties. As a result, the Court **GRANTS** Defendant's Motion to Dismiss Plaintiffs' claim for breach of fiduciary duty.

E.      Breach of "Express Promise to Assist" and Promissory Estoppel

Plaintiffs next allege that Defendant breached its "express promise to assist" them throughout the loan modification process. FAC ¶ 71. Plaintiffs aver that Defendant "made multiple promises to assist [them] in the modification of the Note," but that it breached these promises by giving them advice that proved to be detrimental and by mishandling the documents related to the modification application. *Id.* at ¶¶ 72–74. Plaintiffs clarify, however, that this is not a claim for breach of contract. Pls.' Resp. 13. Because Plaintiffs insist that their claim for breach of "express promise to assist" is not a breach of contract claim, and because Texas courts do not recognize a distinct cause of action for breach of an "express promise to assist," this claim fails.

Nevertheless, the Court considers the parties' respective arguments on the breach of the "express promise to assist" claim in its discussion of Plaintiffs' related claim for promissory estoppel, in which Plaintiffs allege that Defendant "implied a promise to provide . . . assistance with ordinary care." FAC ¶ 83. To invoke promissory estoppel, a plaintiff must establish: (1) a promise; (2) foreseeability of reliance on the promise by the promisor; and (3) substantial detrimental reliance by the promisee. *Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 761 (N.D. Tex. 2012).

Defendant first notes that the Plaintiffs' promissory estoppel claim cannot evade the requirements of the statute of frauds. Def.'s Mot. 23. The statute of frauds dictates that "[a] loan agreement for more than $50,000 is not enforceable unless it is in writing." *Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 256 (5th Cir. 2013) (citing Tex. Bus. & Comm. Code § 26.02(b)). In addition, an agreement regarding the "modification of a loan must . . . be in writing to be valid." *Id.* Plaintiffs claim that Defendant promised to assist them in the modification of their loan or made other promises in connection with this process. Because the loan in this case exceeds the

- 15 -

amount of $50,000, any statement or representation between the parties regarding the modification of the loan is subject to the statute of frauds. *Id.* Here, Plaintiffs rely on Defendant's oral representations related to their loan modification, and they do not assert that these statements were evidenced in writing. *See* FAC ¶¶ 70–75; 83–87. Thus, as an initial matter, Plaintiffs' allegations concerning Defendant's promises are precluded by the statute of frauds.

Although "[p]romissory estoppel may overcome the statute-of-frauds requirement in Texas, . . . 'there must have been a promise to sign a written contract which had been prepared and which would satisfy the requirements of the statute of frauds.'" *Martins*, 722 F.3d at 256–57 (quoting *Beta Drilling, Inc. v. Durkee*, 821 S.W.2d 739, 741 (Tex. App.—Houston [14th Dist.] 1992, writ denied)). However, nowhere do Plaintiffs allege that Defendant made such a promise to sign a written contract. *See* FAC ¶¶ 70–75; 83–87. Accordingly, Plaintiffs' promissory estoppel claim cannot bypass the requirements of the statute of frauds.[8]

Next, Defendant argues that the alleged "promise to assist" is too indefinite and cannot be the basis for a promissory estoppel claim. Def.'s Mot. 23. In response, Plaintiffs point to the list of

---

[8] Plaintiffs also plead that "based upon Defendant's inequitable conduct, actions, inactions and misrepresentations . . . Defendant[] [is] equitably estopped from asserting rights to or defenses against Plaintiffs including the defense of the defense of the statute of limitations and any defense of statute of frauds." FAC ¶ 82. However, the Court concludes that equitable estoppel is inapplicable in this case. "Texas courts do not appear to have considered, much less adopted" the Restatement section that would support an estoppel exception in this case. *Montalvo v. Bank of Am. Corp.*, 864 F. Supp. 2d 567, 584 (W.D. Tex. 2012). In *Montalvo*, the court explained that even if such estoppel theory were available, it would not assist the plaintiff's argument that her default was caused by defendant instructing her to make payments of a certain amount, because the plaintiff "was already in default before contacting [the defendant] about modifying the loan." *Id.* at 584–85. Such is the case here: Plaintiffs insist that they did not make payments in reliance on the instructions Defendant provided during the loan modification process, but their pleadings indicate that they fell behind on their payments as a result of the financial crisis of 2007 and 2008, prior to any attempt at loan modification. FAC ¶¶ 14–16. Thus, there is nothing to suggest that Plaintiffs "would not have defaulted but for being told by the mortgage servicer to make a lower payment," which the *Montalvo* court suggested would be "a strong argument" for equitable estoppel. *Montalvo*, 864 F. Supp. 2d at 585.

Defendant's communications regarding the loan modification, which is included in their Amended Complaint. Pls.' Resp. 26–27; FAC ¶ 24. Of the communications highlighted by Plaintiffs, notable passages relevant to a "promise to assist" include the following: "As your dedicated Homeowner Support Specialist, my goal is to serve as your primary contact to provide you with assistance;" "I will continue to be assigned to help you as long as you are actively pursuing a hardship treatment program;" "I will be your single point of contact going forward and will be here to assist you should you need anything;" "After I have received the requested documents, your file will be submitted to underwriting;" "Once we receive all documents and information needed for a complete loss mitigation application, foreclosure activity will cease while your application is being evaluated for a loss mitigation option;" and "We're here to help." FAC ¶ 24.

Contrary to Plaintiffs' insistence, these statements—as well as any similarly vague "promises to assist" or explanations of the loan modification process—are not actionable, definite promises upon which Plaintiffs could justifiably rely. *See N. Cypress Med. Ctr. Operating Co. Ltd. v. Gallagher Benefit Servs., Inc.*, No. 4:11-CV-00685, 2012 WL 438869, at *5 (S.D. Tex. Feb. 9, 2012) (quoting *Esty v. Beal Bank S.S.B.*, 298 S.W.3d 280, 305 (Tex. App.—Dallas 2009, no pet.) (explaining that, to support promissory estoppel, a promise "must be sufficiently definite" and "must also be more than speculation of future events, a statement of hope, an expression of opinion, an expectation, or an assumption."). It is also unclear how Defendant's alleged statements could have induced Plaintiffs "into definite and substantial action or forebearance," as is required to established promissory estoppel. *Hernandez v. UPS Supply Chain Solutions, Inc.*, 496 F. Supp. 2d 778, 784 (W.D. Tex. 2007).

Because Plaintiffs' breach of "express promise to assist" is not a cognizable claim, and because Plaintiffs have neither met the requirements of the statute of frauds nor alleged sufficient facts to

establish promissory estoppel, the Court **GRANTS** Defendant's Motion to Dismiss as to Plaintiffs'

claims for breach of "express promise to assist" and promissory estoppel.

F.     *Violation of Section 50(a)(6)(Q)(x) of the Texas Constitution*

Lastly, Plaintiffs assert that Defendant violated Section 50(a)(6)(Q)(x) of the Texas

Constitution. FAC ¶¶ 66–69. This particular section protects a homestead from forced sale for the

payment of a debt arising from an extension of credit that is made on the condition that:

> the lender or any holder of the note for the extension of credit shall
> forfeit all principal and interest of the extension of credit if the lender
> or holder fails to comply with the lenders or holder's obligations under
> the extension of credit and fails to correct the failure to comply not
> later than the 60th day after the date the lender or holder is notified
> by the borrower of the lender's failure to comply . . . .

Tex. Const. § 50(a)(6)(Q)(x). In sum, this section allows a party to give notice of a defect, which

the other party has sixty days to remedy. *Iacobucci*, 2013 WL 6061343, at *3 (quoting *Priester v. JP

Morgan Chase Bank, N.A.*, 708 F.3d 667, 673 (5th Cir. 2013)).

Specifically, Plaintiffs claim that Defendant failed to cure a defect in the Note upon receiving

a "Notice of Defect in Texas Home Equity Note" from Plaintiffs' counsel in October 2014. *Id.* at ¶

68; Pls.' App. to FAC, Ex. B, Notice of Defect in Texas Home Equity Note. Plaintiffs' pleadings, as

well as this notice, assert that the Note was defective because it was "not made on the condition"

stated in Section 50(a)(6)(Q)(x) of the Texas Constitution. FAC ¶ 67; Notice of Defect in Texas

Home Equity Note. It thus appears that Plaintiffs claim the Note was defective because it was not

made on the condition listed in Section 50(a)(6)(Q)(x) and because Defendant failed to remedy this

defect within the requisite time. Accordingly, they request that all of the principal and interest on

the Note be forfeited. FAC ¶ 69.

In moving to dismiss this claim, Defendant maintains that the Texas Constitution does not mandate that the language of Section 50(a)(6)(Q)(x) appear in the Note, as it only requires that the Note be "made on" the condition listed in that provision. Def.'s Mot. 20. Defendant adds that the Note was not defective, as it was in fact "made on the condition" described in Section 50(a)(6)(Q)(x). *Id.* Finally, Defendant indicates that this claim is time-barred, as it was filed more than four years after the loan was originated. *Id.* at 21.

As the Fifth Circuit has held, "there is a four-year limitations period for constitutional infirmities under Section 50(a)(6), which begins to run from the closing of the lien." *Iacobucci*, 2013 WL 6061343, at *3 (quoting *Priester*, 708 F.3d at 674–75). Here, as Plaintiffs themselves allege, the loan was originated in February 2007. FAC ¶ 9. Therefore, any claim under Section 50(a)(6) must have been brought by February 2011. However, Plaintiffs did not file the present case until October 20, 2014, over three and a half years after the expiration of the limitations period. *See* Orig. Pet. Although Plaintiffs respond that Defendant fails to "establish when Plaintiffs knew, or should have known of the provision"—presumably either the provision setting a four-year limitations period or Section 50(a)(6)(Q)(x)—Defendant is not required to make such a showing in moving to dismiss Plaintiffs' constitutional claim. Pls.' Resp. 28; *see Iacobucci*, 2013 WL 6061343, at *3.[9] For these reasons, the Court concludes that Plaintiffs' claim under the Texas Constitution is time-barred and therefore **GRANTS** Defendant's Motion to Dismiss as to this matter.

---

[9] In their pleadings, Plaintiffs also aver that they "did not discover, and should not, in exercising reasonable diligence, have discovered, the negligence and courses of action alleged in [the FAC] prior to the applicable statutory time frame for suing and such suit was therefore timely filed. Plaintiffs' injuries were inherently undiscoverable and are objectively verifiable." FAC ¶ 81. However, the Court concludes that the discovery rule is inapplicable in this case because Plaintiffs were in possession of the Note and Deed of Trust and could have discovered any deficiencies had they exercised reasonable diligence.

## IV.

## CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendant CitiMortgage Inc.'s Motion to Dismiss. Doc. 17. Accordingly, Plaintiffs' claims are **DISMISSED without prejudice.**

Normally, courts will afford a plaintiff the opportunity to overcome pleading deficiencies, unless it appears that the defects are incurable. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d. 305, 329 (5th Cir. 2002) ("district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal"); *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (stating that "a court ordinarily should not dismiss the complaint except after affording every opportunity for the plaintiff to state a claim upon which relief can be granted") (internal alterations omitted). Because this Order is the Court's first review of Plaintiffs' allegations, the Court concludes that they should be given the opportunity to overcome the deficiencies in their pleadings.

If Plaintiffs are able to replead and address the grounds for dismissal stated herein, they should do so within thirty (30) days of the date of this Order. Further, any repleading shall be accompanied by a synopsis of no more than ten (10) pages, explaining how the amendments overcome the grounds for dismissal stated in this Order. Should Plaintiffs replead, Defendant is hereby granted leave to file a response to Plaintiffs' synopsis. Any response shall not exceed ten (10) pages and must be filed within fourteen (14) calendar days of the repleading. No further briefing will be permitted. Failure to file an amended pleading will result in a dismissal *with prejudice* of Plaintiffs' claims.

SO ORDERED.

SIGNED: August 12, 2015.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE